UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14010-CR-GRAHAM[1]/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RATAVIOUS DAION MELLS,

    Defendant.
_____/

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE (DE 40)

    Defendant Ratavious Daion Mells is charged by indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922 (g)(1). DE 1.  This matter is before the Court upon Defendant's Motion to Suppress.  DE 40.  The Motion to Suppress has been referred to this Court pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida to take all necessary and proper action as required by law.  DE 45.  The government filed a response (DE 43), and this Court held an evidentiary hearing on November 17, 2021 ("Evidentiary Hearing") (DE 66).

    Defendant argues that the firearm and other evidence should be suppressed because it was illegally seized without a warrant or probable cause.  At the Evidentiary Hearing, the Court heard testimony from one government witness: St. Lucie County Sheriff's Office ("SLCSO") Detective

---

[1] This case is styled on the docket as being assigned to United States District Court Judge Robin L. Rosenberg.  Senior United States District Judge Donald L. Graham, however, is the presiding judge for purposes of trial and has referred this matter to the undersigned.  DE 45.

Jonathan Osteen.  No defense witnesses testified nor did the defense introduce any evidence.[2]  After considering the pleadings, evidence and relevant case law, this Court recommends that the Motion be **DENIED** for the reasons set forth below.

## **FINDINGS OF FACT**

The Court granted Defendant's request for an evidentiary hearing to determine the facts and applicable legal standard.  Based on the evidence presented at the hearing, the Court makes the following findings of fact material to the motion to suppress.

At approximately 1:15 a.m. on October 1, 2019, Det. Osteen was on patrol at or around Orange Avenue and 25th Street in Fort Pierce, Florida when he received a call about, and then observed, an orange Nissan Rogue that had fled from him a few weeks prior.  DE 66 at 13-15; 36.  Det. Osteen did not know who drove the vehicle during the encounter he had with it in the prior incident.  *Id.* at 15-16.  In the encounter at issue here, Det. Osteen observed the subject vehicle being driven normally in a 35 mile-per-hour speed zone until he maneuvered his vehicle behind it while it was going northbound on 25th Street.  *Id.* at 16-18.  Once alerted to Det. Osteen's presence, the vehicle sped up rapidly.  *Id.* at 18.  Det. Osteen pace clocked the orange Nissan Rogue for about two blocks at 50 miles per hour.  *Id.* at 17-18.  Det. Osteen continued following the subject

---

[2] The Motion to Suppress was based upon tracking data from a State-authorized tracking device that was installed unbeknownst to Det. Osteen on the vehicle that Defendant was driving.  DE 45; DE 43 at 3.  The data reflected that the subject vehicle was not speeding while Det. Osteen was chasing it.  The government argued at the Evidentiary Hearing that the defense did not seek to introduce into evidence the data from the tracking device because it proved to be inaccurate as to location and was, therefore, of suspect reliability with respect to speed.  DE 66 at 85-86.

vehicle as it turned eastbound on Avenue C and ran a stop sign at the intersection of Avenue C and 23rd Street, turning northbound on 23rd.[3] *Id.* at 19-20.

After observing the vehicle run the stop sign, Det. Osteen activated his police lights, at which point the vehicle increased in speed. DE 66 at 20. Det. Osteen observed the vehicle make a right-hand turn to go eastbound on Canal Terrace and then make a left-hand turn to go northbound on north 22nd Street. *Id.* at 21. Det. Osteen followed the vehicle onto north 22nd Street, observed it accelerate rapidly to between 70 and 80 miles per hour. *Id.* at 22-23. At no time up to this point did the vehicle's driver comply with orders to stop pursuant to Det. Osteen's flashing lights and sirens. *Id.* at 26. Furthermore, Det. Osteen and his police vehicle made no contact with the subject vehicle or with Defendant up to this point. *Id.* at 26. Det Osteen's supervisor then directed him to break off the pursuit; therefore, he turned off his lights and sirens. *Id.* at 22-23. Det. Osteen continued slowly north on north 22nd Street as he knew the vehicle was approaching a T-intersection at Avenue Q and north 22nd Street and would be unable to negotiate the turn at its high rate of speed. *Id.* at 24.

When Det. Osteen arrived at the intersection of north 22nd Street and Avenue Q, he observed that the Nissan Rogue had crashed into the side of a building. DE 66 at 24. He also observed that the Nissan Rogue had been totaled, there was heavy front-end damage and smoke was coming from the engine. *Id.* Det. Osteen testified that, prior to the vehicle's crash, he did not know who was driving it. *Id.* at 36. Upon arriving at the crash, however, Det. Osteen saw

---

[3] Det. Osteen testified that Defendant ran multiple stop signs; however, he provided specific detail about just this one. DE 66 at 48-49.

Defendant skipping away from the vehicle while favoring an injured leg. *Id.* at 26, 56, 76. Det. Osteen then exited the patrol car and drew his service weapon. *Id.* at 25; 60. Det. Osteen saw that Defendant was carrying a black handgun in his waistband. *Id.* at 26; 59. The gun turned out to be a Glock model 19, 9mm semi-automatic pistol, manufactured outside the State of Florida and loaded with 15 rounds of ammunition. DE 44-2; DE 66 at 26; DE 43 at 2-3. Det. Osteen issued commands for Defendant to keep his hands visible and get on the ground, and Defendant complied. DE 66 at 26.

Det. Osteen held Defendant at gunpoint until backup arrived. DE 66 at 63. While doing so, Det. Osteen kicked the gun, now lying on the ground, several feet further away from Defendant's body. *Id.* at 68-69. Once in custody, Defendant made a statement that "you got me in the car with a gun, but you didn't get nothing else" after Det. Osteen said: "we got you." DE 66 at 72:1-2; 75:16-22. Defendant had a serious leg injury and was taken to Lawnwood medical facility from the scene of the crash. *Id.* at 72; 74.

## DISCUSSION

The Fourth Amendment gives individuals the right to be secure in their persons against unreasonable searches and seizures. U.S. Const. amend. IV, § 1. In order to show that one's Fourth Amendment rights have been violated, "the complainant need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy[.]". *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). "Evidence obtained in violation of the Fourth Amendment must be suppressed." *U.S. v. Jordan,* 635 F.3d 1181, 1185 (11th Cir. 2011). "The proponent of a motion to suppress has the burden to allege, and if the allegations are disputed, to prove, that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States*

*v. Jackson*, 618 F. App'x 472, 474 (11th Cir. 2015) (citing *United States v. Bachner,* 706 F.2d 1121, 1125 & n.5 (11th Cir. 1983)).

"Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may a court conclude that a seizure has occurred." *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011) (internal quotation marks omitted) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)).  Thus, "a person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Craig v. Singletary*, 127 F.3d 1030, 1041 (11th Cir. 1997) (internal quotation marks omitted) (quoting *United States v. Mendenhall*, 446 U.S. 544, 555 (1980)).  An arrest is a seizure.  *United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006) (citation omitted).  A fleeing defendant, however, is not seized until subdued by law enforcement.  *United States v. Dolomon*, 569 F. App'x 889, 893 (11th Cir. 2014) (citing *California v. Hodari D.*, 499 U.S. 621, 629 (1991)).  "[O]nly when a seizure occurs [ ] does the Fourth Amendment and the probable cause requirement apply." *Craig*, 127 F.3d at 1041.

"[T]he probable-cause standard is satisfied when a police officer witnesses a driver commit a traffic violation." *United States v. Wilson*, 979 F.3d 889, 908 (11th Cir. 2020) (citation omitted). Indeed, "[l]aw enforcement may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles." *United States v. Hawkins*, 934 F.3d 1251, 1259 (11th Cir. 2019) (internal quotation marks and citation omitted).  Subjective intentions of law enforcement, however, "play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996) (noting that "the constitutional basis for objecting to intentionally

discriminatory application of the law is the Equal Protection Clause, not the Fourth Amendment"). Rather, "the circumstances, viewed objectively, [must] justify th[e] [officer's] action." *Id.*

Here, the firearm in question is not the fruit of an unconstitutional seizure for two reasons. First, the defense presented no evidence to demonstrate that a seizure occurred prior to Defendant's arrest, which arrest happened after Defendant ran into a building while driving the vehicle in question at a very high speed. *Dolomon*, 569 F. App'x at 893 (citing *Hodari D.*, 499 U.S. at 629). Second, by the time a seizure occurred, probable cause existed. *Wilson*, 979 F.3d at 908.

With respect to the first reason, prior to the crash, Det. Osteen observed Defendant speed up when he maneuvered his vehicle directly behind Defendant, and his law enforcement vehicle became visible to Defendant. Following this, Det. Osteen had probable cause to stop the subject vehicle and arrest Defendant when he observed Defendant speeding and running at least one stop sign. *Wilson*, 979 F.3d at 908. When Det. Osteen signaled Defendant to stop the vehicle by turning on his siren and flashing lights, however, Defendant increased his speed to elude being detained or arrested for traffic violations. There was no physical contact between Det. Osteen and Defendant to this point. Therefore, even though probable cause existed, there was no seizure because Defendant fled. *Dolomon*, 569 F. App'x 889 at 893 (citing *Hodari D.*, 499 U.S. at 629).

Furthermore, Defendant's innuendo regarding Det. Osteen's subjective intent in following Defendant is unavailing. (DE 66 at 83-84) (arguing that Det. Osteen's following of Defendant constitutes a stop "especially if it is an African American being pursued by a police officer who has no reason to pursue that vehicle on that . . . morning of the incident"). Det. Osteen testified that he did not know who was driving the vehicle. Furthermore, even if Det. Osteen did know that

Defendant was driving the orange Nissan Rogue at issue, his actions to stop a vehicle that was speeding and running stop signs are objectively justified. *Whren*, 517 U.S. at 813.

As to the second reason, Det. Osteen unquestionably had probable cause to arrest Defendant at the time of crash. After speeding and running at least one stop sign, Defendant ran the vehicle into a building at such speed as to make it undrivable. Defendant then exited the vehicle in a manner indicating an intent to escape from the scene of the crash. The arresting officer, Det. Osteen, observed Defendant carrying a gun in his waistband while moving to vacate the location. Not only was the gun open and conspicuous, but "[a]n inventory search of a defendant's personal effects is a routine administrative procedure conducted by police incident to arrest." *Chrispen v. Sec'y, Fla. Dep't of Corr.*, 246 F. App'x 599, 601 (11th Cir. 2007) (citing *California v. Greenwood*, 486 U.S. 35, 39-40 (1988)). Therefore, law enforcement's action to secure the gun as evidence when arresting Defendant was objectively justifiable. *Whren*, 517 U.S. at 813.

**ACCORDINGLY**, this Court recommends to the District Court that Defendant's Motion to Suppress Illegally Obtained Evidence (DE 40) be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald L. Graham, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 28th day of December, 2021.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE